IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) ELIZABETH HUSSEIN,<br><br>*Plaintiff*,<br>v.<br><br>1) TRANSFORMATION CHURCH, INC.,<br><br>*Defendant*. | Civil Action No. 4:22-cv-00047-GKF -SH<br><br>**COMPLAINT**<br>**(Jury Demanded)** |

COMES NOW, Plaintiff ELIZABETH HUSSEIN ("Mrs. Hussein"), by and through her undersigned counsel, and hereby complains and alleges against the above-named Defendant, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

### PARTIES

1. Plaintiff, Elizabeth Hussein, is currently a resident of the State of Connecticut.

2. Defendant, Transformation Church, Inc. ("Transformation"), is a religious organization with its principal place of business in Tulsa, Oklahoma.

3. At all times relevant hereto, and in all actions described herein, Defendant's actions took place in Tulsa and Bixby, Oklahoma.

### JURISDICTION & VENUE

4. Subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1332 (diversity of citizens) because the amount in controversy exceeds $75,000.00, and the parties are diverse and 28 U.S.C. § 1331 (federal question), as there exist claims based upon 42 U.S.C. §§ 2000e, *et seq.* and 42 U.S.C. §12101 *et seq.* This Court has personal jurisdiction over the parties because, *inter alia*, Defendant is located in the Northern District of Oklahoma.

5. On December 31, 2020, Mrs. Hussein filed a complaint alleging pregnancy discrimination with the Oklahoma Office of Civil Rights Enforcement ("OCRE"). On February 12, 2021, OCRE issued a "Dismissal and Notice of Rights" to Mrs. Hussein based on a lack of jurisdiction. Mrs. Hussein has therefore exhausted administrative remedies and now files this suit.

6. Venue is proper in the Northern District of Oklahoma pursuant to 28 U.S.C. § 1391(b) in that the claims arose in this district, and Defendant is located in this district.

7. Costs and attorney's fees are sought.

## GENERAL FACTUAL ALLEGATIONS

8. Elizabeth Hussein is a former aerospace engineer with a degree in mechanical engineering and experience in team leadership, financial planning, and project management.

9. In September 2019, Mrs. Hussein applied to the Formation Internship ("Internship") offered by Transformation.

10. In October 2019, Mrs. Hussein had an initial telephone interview with two Transformation staff members regarding her application to the Internship program. During this interview, Mrs. Hussein informed the interviewers of her life circumstances, including her age, marital status, and husband's travel requirements. She also informed the staff that she was willing to relocate her family from her then home state of Connecticut to Oklahoma in order to participate in the Internship.

11. On November 20, 2019, Transformation Church Internship Director, Will Heckenbach, informed Mrs. Hussein that she was selected for the Internship program. Mr. Heckenbach stated that the program would start on January 27, 2020, and further details would be forthcoming.

12. The Internship was unpaid, and Mrs. Hussein was informed that interns were required to pay Transformation $1,500.00 tuition.

13. The Internship was designed for interns to gain experience in one of the divisions supporting Transformation's operations, including the "Experience" division addressing social media and visual/music production, the Ministry division, and the Operations division covering human resources, facilities matters and technology, with the intent that such interns would be prepared for full time staff positions at Transformation. The Internship was, in fact, billed as preparing interns for leadership positions at Transformation.

14. While the Internship itself is unpaid, following the Internship, Transformation selects certain interns to progress to its "Residency" program, in which individuals are paid a stipend while gaining further experience in preparation for ongoing employment at Transformation.

15. Indeed, Transformation itself referred to the Internship as a job, informing interns that the internship was "full time" at 40 hours a week, plus additional evening or weekend hours for special events, and that interns could not work "an additional job," as outside employment would interfere with the interns' responsibilities.

16. Following her acceptance as an intern in the Operations division, Mrs. Hussein paid Transformation the $1,500.00 tuition.

17. Mrs. Hussein then paid to move her family to Oklahoma in order to begin the Internship program.

18. On January 24, 2020, approximately two months after Mrs. Hussein accepted Transformation's offer to join the Internship program and three days prior to the program start date, Mr. Heckenbach provided Mrs. Hussein with program details and materials such as the first-

day orientation schedule and arrival time and, on the program start date, the policies and procedures applicable to interns.

19. Among the materials provided were excerpts from Transformation's "Staff Handbook," addressing policies applicable to employees and which Transformation represented applied to the interns, including the corrective action policy, culture code and honor code. During the Internship Orientation, which took place from January 27-30, 2020, Transformation told interns they would be regarded as leaders, held to the same standards as staff members and encouraged them to review and adopt company policies in order to represent the organization properly. The Staff Handbook included a progressive discipline policy and its policy on non-discrimination and harassment, including on the basis of sex and disability. While the Internship was designed to last six months, after which interns might progress to the Residency Program, both interns and Transformation could terminate the Internship at any time, and the "at-will" nature of the internship was confirmed by the Staff Handbook.

20. On January 24, 2020, Mrs. Hussein informed Mr. Heckenbach that she was pregnant with her second child, and that, as a result of her pregnancy, she would require reasonable breaks.

21. She additionally sent Mr. Heckenbach questions regarding work schedules and accommodations, but Mr. Heckenbach did not respond.

22. On February 8, 2020, Mrs. Hussein was assigned to work the "Grand Opening Event." On this day, Mrs. Hussein worked more than 12 hours including physically setting up the stage and guest receiving areas, hosting special guests, welcoming visitors, and manning the Merchandise Store lines. Mrs. Hussein also was assigned to complete guest registration outside the facility for more than 4 hours in 48°F weather. Transformation made no accommodations for

her pregnancy, and she was forced to remain on her feet until the very end of the day when she managed to find a chair on which to sit in order to complete these tasks.

23. The grueling schedule continued the following day, when interns were expected to work 7:30am to 10pm, without breaks, and did not have time to eat. By mid-afternoon, Ms. Hussein was unable to continue, due to her pregnancy, and again requested, and finally obtained, permission for a brief break before returning for the evening event from 6pm to 10pm.

24. Transformation operated many of their functions out of the Spirit Bank Events Center in Bixby, Oklahoma. During January 2020 through February 2020, the Spirit Bank Events Center was under renovations; including, but not limited to, demolition, painting, and sanding. Transformation interns, including Mrs. Hussein, were required to work in the building during the renovations with no protective equipment provided to protect against any hazards posed by the active renovation site.

25. Between January 27, 2020, through her termination on March 9, 2020, Transformation required Mrs. Hussein to work at the Spirit Bank Events Center, where she was exposed to toxic paint fumes and debris from the renovation.

26. Mrs. Hussein repeatedly expressed her concerns about the hazardous working environment to Mr. Heckenbach, including the potentially negative impact on her pregnancy. On February 13, 2020, Mrs. Hussein specifically asked to work from home as a reasonable accommodation, which still would have enabled her to perform her duties, without the exposure to hazardous conditions.

27. Mr. Heckenbach did not respond to Mrs. Hussein's concerns regarding the unsafe work environment or discuss or provide any accommodations. In fact, Mr. Heckenbach told Mrs. Hussein that "it would not be fair to the other interns to make changes for you."

28. Mrs. Hussein also spoke with Transformation Pastor Julia Tucker to discuss her request for reasonable accommodations. Pastor Tucker took no action, simply recommending that Mrs. Hussein "lean on" community members.

29. On February 25, 2020, Mrs. Hussein was admitted to Hillcrest Hospital South for signs of pre-stroke. Mrs. Hussein was diagnosed with complex migraines due to high levels of stress arising out of the conditions of the internship. She was released on February 27, 2020, but required additional time to recover.

30. Mrs. Hussein informed Transformations she would be able to return on March 9, 2020.

31. Mr. Heckenbach then met with Mrs. Hussein to discuss her return to Transformation. During that meeting, Mr. Heckenbach expressed concern that Mrs. Hussein would be unable to adequately, "physically" support future events due to her pregnancy. When Mrs. Hussein asked for clarification about what additional or different physical support would be required, given that physical labor was not a component of the internship, Mr. Heckenbach admitted he could not specify any particular changes.

32. When Mrs. Hussein returned to Transformation on March 9, 2020, Mr. Heckenbach asked to meet with her. During that meeting, Mr. Heckenbach dismissed Mrs. Hussein from the Internship. The sole reason provided was that he felt continuing the internship was not "best" for Mrs. Hussein and her family.

33. Prior to being terminated, Mrs. Hussein had received only praise for her work and was not subject to any verbal or written warnings or any other indication of problems with her performance. Transformation terminated Mrs. Hussein without following its progressive discipline policy applied to all other employees.

34. Immediately following Mrs. Hussein's dismissal, Transformation attempted to return her tuition fee. In doing so, Transformation implied that by accepting the refund, Mrs. Hussein would be accepting her termination. Mrs. Hussein therefore initially declined the refund as she believed her dismissal was improper.

35. In April 2020, Transformation inquired if Mrs. Hussein would accept a refund of the tuition check and an undefined "love offering," which Mrs. Hussein understood to be an attempted bribe; thus, she declined. When it was clear that Transformation would not reverse its dismissal, Mrs. Hussein ultimately provided her address. Transformation then sent her a refund check. However, understanding it was a bribe and/or acceptance of her dismissal, Mrs. Hussein never cashed it.

36. During the weeks she interned for Transformation, she assisted Transformations in improving its systems and approaches. Transformation utilized and benefited from her work, including her ideas to create a new position to improve operations.

37. On December 31, 2020, Mrs. Hussein filed a complaint with the OCRE alleging discrimination on the basis of her pregnancy. On February 12, 2021, OCRE issued a "Dismissal and Notice of Rights" to Mrs. Hussein based on a lack of jurisdiction.

38. Transformation has yet to reimburse or pay restitution to Mrs. Hussein for the costs incurred moving her family from Connecticut to Oklahoma, and for labor expenses Transformation saved by using Mrs. Hussein's services. Nor has it reimbursed her for her tuition payment in a manner that did not require her to accept her dismissal.

39. As a result of Defendant's conduct, Mrs. Hussein has suffered physical, emotional and financial damages, in excess of $75,000, including, but not limited to, her tuition payment to Transformation, relocation expenses, and other expenses incurred to participate in the Internship,

medical expenses and the loss of employment and other opportunities from taking and then being dismissed from the Internship, and resulting emotional distress.

40. It has also been necessary for Mrs. Hussein to obtain the services of an attorney to prosecute this action, and she is entitled to an award of attorney's fees and costs of suit incurred herein.

## FIRST CAUSE OF ACTION

### *WRONGFUL DISCHARGE*

41. Each of the allegations set forth in paragraphs 1 through 40, inclusive, are hereby incorporated by this reference as if realleged fully herein.

42. Oklahoma recognizes a claim for wrongful discharge where an employer's discharge of an employee is against public policy, including internally or externally exposing an employer's unsafe or illegal employment practices.

43. Transformation treated interns as employees, requiring them to work "full time" and prohibiting any "additional" jobs, as well as subjecting them to the same policies applicable to all employees under their Staff Handbook.

44. Further, Transformation provided interns with significant experience and training and regularly hired interns for ongoing employment.

45. Oklahoma has a clear public policy that employers must provide employees with safe workplaces and are not permitted to discriminate on the basis of sex, including pregnancy.

46. Mrs. Hussein repeatedly reported hazardous working conditions to Mr. Heckenbach, including toxic paint fumes, debris, and the requirement to work in and pass through an active construction site without proper protective equipment.

47. She also repeatedly complained of Transformation's failure to provide her with necessary accommodations for her pregnancy, which constitutes illegal sex discrimination.

48. Within a few weeks of these complaints, Transformation wrongfully terminated her internship.

49. As a result of Defendant's conduct, Mrs. Hussein has suffered physical, emotional and financial damages, including, but not limited to, her tuition payment to Transformation, relocation expenses, and other expenses incurred to participate in the Internship, medical expenses and the loss of employment and other opportunities from taking and then being dismissed from the Internship, and resulting emotional distress.

50. It has been necessary for Mrs. Hussein to obtain the services of an attorney to prosecute this action, and she is entitled to an award of attorney's fees and costs of suit incurred herein.

## SECOND CAUSE OF ACTION

### *SEX DISCRIMINATION IN VIOLATION OF TITLE VII AND THE OKLAHOMA ANTI-DISCRIMINATION ACT*

51. Each of the allegations set forth in paragraphs 1 through 40, inclusive, are hereby incorporated by this reference as if realleged fully herein.

52. The Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, §§ 1101 *et seq.*, and Title VII, 42 U.S.C. §§ 2000-e *et seq.*, prohibit discrimination on the basis of sex, including pregnancy, in employment, including in admission to or participation in a training or apprenticeship program, regardless of whether the individual is an "employee," and in application for employment.

53. Transformation treated interns as employees, requiring them to work "full time" and prohibiting any "additional" jobs, as well as subjecting them to the same policies applicable to all employees under their Staff Handbook.

54. Further, Transformation provided interns with significant experience and training and regularly hired interns for ongoing employment.

55. Alternatively, the Internship constituted a training program of Transformation or part of the application process leading to paid employment, as a prerequisite for being admitted to Transformation's paid Residency program.

56. Accordingly, Transformation was prohibited from discriminating against Mrs. Hussein as an employee, participant in its training program or applicant for employment on the basis of her sex, including her pregnancy. As such, Transformation was required to provide Mrs. Hussein with accommodations necessary due to her pregnancy to the same extent such accommodations were available to others with similar limitations.

57. Transformation provided reasonable accommodations to individuals limited in their ability to work as a result of disability or other non-pregnancy conditions, including breaks and adjustments to work schedules and working conditions.

58. Additionally, Transformation regularly excused interns from certain duties and permitted them to deviate from the proscribed work schedule for convenience or similar reasons.

59. Despite this, Transformation discriminated against Mrs. Hussein when it denied her similar adjustments to her work schedule, access to adequate breaks, or a change in her working environment to avoid hazardous and toxic working conditions that posed a threat to her pregnancy.

60. Transformation subsequently discriminated against Mrs. Hussein when it terminated her because it did not believe she could "physically" support ongoing events as a result

of her pregnancy, even though her Internship did not involve physical labor and she was capable of performing all duties of the Internship.

61. As a result of Defendant's conduct, Mrs. Hussein has suffered physical, emotional and financial damages, including, but not limited to, her tuition payment to Transformation, relocation expenses, and other expenses incurred to participate in the Internship, medical expenses and the loss of employment and other opportunities from taking and then being dismissed from the Internship, and resulting emotional distress.

62. It has been necessary for Mrs. Hussein to obtain the services of an attorney to prosecute this action, and she is entitled to an award of attorney's fees and costs of suit incurred herein.

**THIRD CAUSE OF ACTION**

***DISABILITY DISCRIMINATION IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 AND THE OKLAHOMA ANTI-DISCRIMINATION ACT***

63. Each of the allegations set forth in paragraphs 1 through 40, inclusive, are hereby incorporated by this reference as if realleged fully herein.

64. The Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, §§ 1101 *et seq.*, and Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, prohibit discrimination against those with a disability in employment and with respect to admission to or participation in a training or apprenticeship program, regardless of whether the individual is an "employee."

65. Transformation treated interns as employees, requiring them to work "full time" and prohibiting any "additional" jobs, as well as subjecting them to the same policies applicable to all employees under their Staff Handbook.

66. Further, Transformation provided interns with significant experience and training, and regularly hired interns for ongoing employment.

67. Alternatively, the Internship constituted a training program of Transformation or part of the application process leading to paid employment, as a prerequisite for being admitted to Transformation's paid Residency program.

68. Accordingly, Transformation was prohibited from discriminating against Mrs. Hussein on the basis of disability, or perceived disability, as an employee, participant in a training program or applicant.

69. Mrs. Hussein's pregnancy limited her ability to work without breaks and further resulted in such significant migraines that she required hospitalization and was unable to work for a period. Accordingly, Mrs. Hussein's pregnancy and/or associated migraines constituted a disability.

70. Alternatively, Transformation viewed Mrs. Hussein's pregnancy and/or associated medical condition as substantially limiting her ability to engage in physical tasks, including work, and thus regarded Mrs. Hussein as an individual with a disability.

71. Mrs. Hussein was qualified for the Internship and performing satisfactorily prior to her requests for accommodations and her brief absence related to her hospitalization, and she was able to perform all duties of the Internship with or without reasonable accommodations.

72. Transformation discriminated against Mrs. Hussein when it refused to provide Mrs. Hussein with reasonable accommodations of breaks, full or partial work from home or other work adjustments, and then terminated her from the Internship.

73. As a result of Defendant's conduct, Mrs. Hussein has suffered physical, emotional and financial damages, including, but not limited to, her tuition payment to Transformation,

relocation expenses, and other expenses incurred to participate in the Internship, medical expenses and the loss of employment and other opportunities from taking and then being dismissed from the Internship, and resulting emotional distress.

74. It has been necessary for Mrs. Hussein to obtain the services of an attorney to prosecute this action, and she is entitled to an award of attorney's fees and costs of suit incurred herein.

## FOURTH CAUSE OF ACTION

### *UNJUST ENRICHMENT*

75. Each of the allegations set forth in paragraphs 1 through 40, inclusive, are hereby incorporated by this reference as if realleged fully herein.

76. During the course of Mrs. Hussein's internship, Transformation received valuable and measurable unpaid work product from Mrs. Hussein that is still being used today. Transformation received the benefit of free work that otherwise would have been a labor cost for the Church; thus, Mrs. Hussein's work reduced Transformation's expenses.

77. Further, Transformation required interns to pay, and Mrs. Hussein paid, $1500.00 in "tuition" in order to participate in the Internship, an amount which Transformation has retained.

78. While Transformation received these benefits, it wrongfully discriminated against Mrs. Hussein and dismissed her from the Internship well before its completion, depriving her of the benefits of the Internship and without compensation for her work product and labor.

79. Transformation unjustly reaped the benefits of a cash payment and reduced labor costs all at the expense of Mrs. Hussein.

80. Consequently, it is only conscionable and equitable that Mrs. Hussein recover the cash equivalent of her labor, relocation expenses, and work product that Transformation received due to Mrs. Hussein's participation in the Internship program.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Mrs. Hussein demands a jury trial for all issues in this matter.

## RELIEF REQUESTED

WHEREFORE, Mrs. Hussein prays that this Honorable Court enter judgment in her favor, and against Defendant: (a) for general and compensatory damages in an amount to be determined at trial, including for lost wages and emotional distress; (b) for reimbursement of the full amount of Mrs. Hussein's expenses incurred, including tuition for the Internship and related moving and

///

///

living expenses and medical expenses; (c) for reimbursement of the full amount of Mrs. Hussein's attorney's fees; and (d) further relief as justice requires.

DATED this 25th day of January, 2022.

Respectfully Submitted,

**LEVINSON, SMITH & HUFFMAN, PC**

By  */s/ R. Jack Freeman*
R. JACK FREEMAN, OBA #3128
1861 East 71st Street
Tulsa, Oklahoma 74136
Telephone: (918) 492-4433
Facsimile: (918) 492-6224
Email: jack@lsh-law.com
    and
**THE BACH LAW FIRM, LLC**
JASON J. BACH
*Pro Hac Vice Admission Pending*
7881 West Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email: jbach@bachlawfirm.com
*Attorneys for Plaintiff*